## THOMAS v. COMMONWEALTH.

Court of Appeals of Kentucky.
Nov. 7, 1952.

Shumate & Shumate and H. M. Shumate, Irvine, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Chief Justice.

Clay Thomas is appealing from a judgment sentencing him to five years in prison on a charge of malicious shooting and wounding of Martin Little with intent to kill. He contends the court erred in the admission of certain evidence and in instructing the jury. We think both contentions are well grounded.

The shooting took place at Thomas' home. Prior to the time of the shooting Thomas and Little had been riding with Julius Fox in the latter's car. In their first trip out of Beattyville the parties drank some whiskey which Little and Fox had in their possession. Before they started on the trip, which ended at Thomas' home, Thomas gave Little $2 for a half pint of whiskey. According to Thomas' proof, Little demanded that he pay him another $2 for whiskey when he started to get out of the car. As Thomas was getting out of the car, or shortly thereafter, he drew his pistol and fired two shots into the ground. He said he warned Little not

684

to come into his yard. However, Fox and Little said that Mrs. Thomas asked Little to help her get Clay up to the house and onto the porch.

Fox said that Little "* * * turned him loose and patted him on the shoulder and Clay turned and shot him and by that time I was out of sight." Little's statement was: "* * * and when I got him to the porch and up on the porch I turned him loose and started to turn and go back to the car and I heard a gun fire and I was shot." Thomas' statement was: "We got to scuffling and I still had the gun in my hand and he was trying to get it and the gun went off and shot him and he turned loose of me just for a second and then he took the gun away from me and shot at me." The last shot hit Thomas in the hand.

■ The incompetent evidence concerns the introduction by Little of an overcoat which he said he was wearing at the time Thomas shot him. Over the objection of Thomas, Little was asked if there were powder burns on his clothes and he said, "No." He was then permitted to show the jury where the bullet struck the overcoat. The integrity of the overcoat was not established. This should have been done. McElfresh v. Commonwealth, Ky., 243 S.W.2d 497.

We can not agree with the contention of the Commonwealth that the introduction of the overcoat was immaterial. All the evidence points to a scuffle or mutual combat between Thomas and Little. Both were drinking and, apparently, Thomas was drunk. Certainly he was handling his pistol in a reckless manner. According to his version of the shooting, it was an accident. On the other hand, the testimony of Fox and Little tends to show that Little was shot as he was walking away from Thomas. The absence of powder burns on the overcoat substantiates this version of the shooting. According to Thomas' version, Little was shot while they were scuffling over the gun.

■■ The instructions should have embraced the theories of mutual combat and reckless use of firearms. There was no occasion for an instruction on self-defense, or for one on defense of habitation.

Judgment reversed, with directions to set it aside, and for proceedings consistent with this opinion.